**Reatha Leckie JONES,
Petitioner-Appellant,**

v.

**Robert Seth JONES,
Respondent-Respondent.**

No. 49137.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 13, 1987.

Motion for Rehearing and/or Transfer
Denied Feb. 11, 1987.

Application to Transfer Denied
March 17, 1987.

Elaine C. Bachman, Clayton, for petitioner-appellant.

Charles C. Schwartz, Clayton, for respondent-respondent.

REINHARD, Judge.

Dissolution action. Wife raises one meritorious point on appeal which requires a modification of the decree. We affirm the decree as modified.

The parties were married in 1974 and separated in 1981. In 1982, husband's base salary was $37,500 per year, in addition to which he received commissions. Wife was unemployed at the time of the hearing; however, she had been employed previously and had secretarial experience. In the decree of dissolution, the court set aside the parties' separate property and divided the marital assets. The marital home, which was the principal marital asset, was ordered sold and the equity divided equally. Wife was granted primary custody of the two minor children, and husband was ordered to pay wife $300.00 per month per child for child support and $6,300.00 maintenance in gross. Husband was also or-

dered to pay a portion of the wife's attorney fees.

Wife contends on appeal that the court erred in failing to award her at least nominal periodic maintenance because she was suffering from an "incurable and disabling disease," lupus erythematosis, commonly known as lupus. She described lupus as a collagen disease and stated that her "manifestation" was "in the joint area." She indicated that her disease is similar to "rheumatoid arthritis with symptoms that move all over [her] body," occasionally immobilizing her, and sometimes forcing her to use crutches. She also has frequent episodes of severe fatigue. She testified that medication alleviated her symptoms, but did not eliminate them.

The deposition of Dr. Carmody, an internist specializing in endocrinology, was admitted into evidence. He treated wife beginning in April 1981, at which time she "had a hot, red joint and was unable to walk." Testing indicated that wife did not have rheumatoid arthritis; however, "she had positive tests for lupus erythematosis." Dr. Carmody testified that it is his opinion, based upon a reasonable degree of medical certainty, that wife has lupus. He described lupus as a "chronic auto-immune disease affecting just about every organ of the body." He testified that it is a multisystem disease, and described the possibilities of the disease affecting various areas of the body. He said "it has an unpredictable course." Lupus can be life-threatening in people with "kidney involvement," which is the most severe complication.

He stated that the disease "tends to come and go, to wax and wane." About 90% of the people who have lupus suffer from periodic flare-ups, but are not totally incapacitated or disabled. Wife is presently in that 90% category. Dr. Carmody said she had never indicated to him that she was unable to work; however, he stated that lupus often causes fatigue and said that wife's condition could prevent her from working in the future. He testified that he cannot predict the frequency of the "flare-ups" and cannot say with certainty whether she will eventually suffer from "progressive renal disease."

Also in evidence was the deposition of Dr. Nickel, who had previously treated wife and was her husband's family doctor. He found no evidence of lupus but found her to be suffering from hypothyroidism and periodic bouts of depression. He described depression from a medical standpoint as "a very disabling, incapacitating disease ..." However, he declined to offer an opinion as to whether or not wife is incapacitated, saying, "I don't have any information on that." He last saw her in July 1982, but she refused to let him examine her at that time. Wife filed a malpractice action against Dr. Nickel prior to the taking of his deposition in this case.

In response to wife's argument, husband contends that there was conflicting testimony regarding whether or not wife has lupus. We cannot agree with husband's characterization of the evidence. Dr. Nickel last saw wife in July 1982 and did not physically examine her at that time. Dr. Carmody saw wife approximately five months before the trial. He testified he believes, within a reasonable degree of medical certainty, that wife has lupus. Dr. Nickel did not testify as to wife's physical condition just prior to trial. Therefore, we perceive no conflict in regard to the evidence of wife's condition at the time of the trial.

Husband also argues that wife's physical condition "did not rise to the level of severity required by case law to maintain jurisdiction over the parties." The principles governing the granting of nominal periodic maintenance for the purpose of maintaining jurisdiction are set forth in *McBane v. McBane*, 553 S.W.2d 521 (Mo.App.1977) and *Abney v. Abney*, 575 S.W.2d 842 (Mo. App.1978). In *McBane* the western district held:

> Where ... the evidence shows a physical condition existing at the time of the marriage dissolution which has a substantial potentiality for disabling the wife from remaining self-supporting, fairness to the wife requires that her existing physical condition be taken into

account. It would be impractical to undertake to try to reduce the future possibilities to a present dollar allowance. It is, however, completely feasible for the trial court to retain jurisdiction and to let the matter abide for future developments. If it develops that no change occurs in the wife's condition, then no allowance of substantial maintenance to her will ever be necessary; on the other hand, if her situation takes a turn for the worse, then the extent of her disability and the husband's then ability to contribute to her support can be evaluated at that time.

*Id.* at 524.

In *Abney* there was no expert testimony as to wife's present condition or prognosis, and no testimony from wife as to any additional future disability. In reversing and remanding that case we said:

> [T]he *McBane* extension of the considerations for maintenance becomes applicable only when the potential for future inability to work is established by evidence exceeding mere guesswork or speculation. Mere suppositions of future inability to work are not adequate. In *McBane*, for example there was medical testimony as to the potential for Mrs. McBane's future incapacity.

Dr. Carmody, who had made the most recent evaluation of wife's physical condition, testified that in his opinion, based upon a reasonable degree of medical certainty, she has lupus. Dr. Carmody's extensive testimony regarding lupus established that it is a potentially life-threatening disease which in some cases is disabling. He further testified that present medical techniques do not enable physicians to determine who will become incapacitated or disabled because of the disease. We believe the evidence here indicates that wife has a physical condition which has a "substantial potentiality for disabling her from being self-supporting" in the future. There was credible medical testimony on the issue of wife's condition, in contrast to *Abney*, and the evidence establishing wife's condition exceeded "mere guesswork or speculation." The court

erred in failing to retain jurisdiction by granting nominal periodic maintenance.

We find no merit in wife's other allegations of error. Rule 84.16(b). The decree of dissolution is modified by adding the following clause: "In order that this court retain jurisdiction to award such maintenance to petitioner at such future time or times as circumstances may require, nominal maintenance is hereby awarded to petitioner in the sum of one dollar per year."

The judgment as modified is affirmed.

SMITH, P.J., and DOWD, J., concur.